**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BENJAMIN NASH | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 23-3679 |
| | : | |
| BRIAN MITCHELL | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                                 **November 17, 2023**

A Philadelphia police officer allegedly shot a business owner carrying a firearm in his business over a year ago. The police officer arrested the business owner on unspecified charges. The criminal charges remain pending in state court. The incarcerated business owner sued the City of Philadelphia, its Police Department, and the officer claiming they violated his constitutional rights through excessive force and possibly false arrest. We granted the business owner leave to proceed without paying fees based on his financial condition. Congress requires we screen his Complaint before issuing summons. We screened his amended Complaint. We today dismiss all claims against the Police Department with prejudice as it is not a person subject to the civil rights law. We also dismiss the incarcerated business owner's claims against the City for excessive force without prejudice but allow his excessive force claim against the police officer to proceed. He must succeed in his criminal defense to proceed on his possible false arrest or false imprisonment claim.

I.        **Alleged *pro se* facts**

1

Business owner Benjamin Nash arrived at his business Nash Maintenance on September 10, 2022.[1] Mr. Nash thought someone broke into his business.[2] He searched the business to investigate.[3] Mr. Nash heard a loud noise which he attributed to a person "breaking in" to the building.[4] Mr. Nash, holding a firearm, opened the door before realizing the police presence outside "barg[ing]" towards the building.[5] Mr. Nash did not know police officers approached his business because the police officers failed to announce their presence, or "knock-and-announce."[6] Mr. Nash "immediately lowered his firearm" and retreated inside.[7] The police officers discharged multiple rounds from their firearms into the building, striking Mr. Nash in the buttocks.[8] Officer Michell arrested Mr. Nash on "trumped up" charges.[9] He remains in state custody pending his criminal proceedings.[10]

## II.   Analysis

The incarcerated Mr. Nash sues the City of Philadelphia, its Police Department, and Philadelphia Police Officer Brian Mitchell in his "personal [and] official" capacity.[11] Mr. Nash's sparse facts, construed in the most liberal fashion without speculation, allege the City, its Police Department, and Officer Mitchell violated his rights to be free from excessive use of force, false arrest, and false imprisonment when Officer Mitchell allegedly shot and arrested him in his place of business on September 10, 2022.[12] Mr. Nash seeks unspecified monetary damages.[13]

Congress, through section 1983, allows persons to bring constitutional claims in federal court against state actors.[14] Mr. Nash must plead two elements to proceed on his Fourth Amendment excessive use of force claim and unlawful arrest claim: (1) a person acting under the color of state law committed the complained-of conduct; and (2) the conduct deprived Mr. Nash of rights, privileges, or immunities under the United States Constitution.[15]

Consistent with Congress's mandate we screen complaints filed by incarcerated persons proceeding without paying filing fees, we must dismiss a complaint before issuing summons if we find the claims are frivolous or malicious, fail to state a claim on which relief may be granted, or seek monetary relief against persons immune from such relief. We apply the same standard under Federal Rule of Civil Procedure 12(b)(6) when considering whether to dismiss a complaint under § 1915(e)(2)(B)(ii).[16] Mr. Nash can meet the Rule 12(b)(6) standard if he pleads "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"[17] We accept the facts in Mr. Nash's amended Complaint as true and construe the facts in the light most favorable to him to determine whether he states a plausible claim for relief.[18]

We dismiss with prejudice Mr. Nash's claims against the Philadelphia Police Department. We dismiss without prejudice Mr. Nash's claims against the City. We permit Mr. Nash's excessive force claim against Officer Mitchell to proceed but dismiss without prejudice his remaining claims against Officer Mitchell in his personal and official capacity.

### A.  We dismiss Mr. Nash's claims against the Police Department with prejudice.

Mr. Nash sues the Philadelphia Police Department for alleged constitutional violations.[19] The Philadelphia Police Department is not a "person" under Section 1983 because it is a "sub-unit" of the City carrying out policing functions.[20] "In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."[21] "Thus, a police department lacks an identity separate from the municipality of which it is a part.'"[22] The Philadelphia Police Department is not liable under Section 1983.[23] We dismiss with prejudice Mr. Nash's claims against the Philadelphia Police Department because it is not a "person" under Section 1983.

**B.  We dismiss Mr. Nash's municipal liability claims without prejudice**.

Mr. Nash sues the City for damages resulting from police officers' alleged excessive use of force and false arrest.[24] Mr. Nash can successfully plead the City's municipal liability under section 1983 by alleging facts the City had an unlawful policy or custom which proximately caused his injury.[25] "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict … Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed  or authorized by law, is so well-settled and permanent as virtually to constitute law."[26] Mr. Nash must plead facts implying "an affirmative link" between the constitutional violation and the City's municipal policy or custom.[27] Facts demonstrating an affirmative link include the state actor's knowledge of similar unlawful past acts and the state actor's failure to prevent similar future unlawful acts contributing to the alleged injury.[28]

The City cannot be liable for their employees' unconstitutional actions under a respondeat superior theory, but it may be subject to *Monell* liability for failure to train its employees.[29] "A municipality's failure to adequately train its employees gives rise to a cause of action under Section 1983 if the deficient training reflects a deliberate indifference to an individual's civil rights, and is 'closely related to the ultimate injury.'"[30] A person must allege facts signaling a pattern of violations to show the state actor's deficient training rises to deliberate indifference of an individual's civil rights.[31] Even if Mr. Nash cannot plead a pattern of violations, our Court of Appeals allows failure to train claims to proceed if he can plead "(1) a violation of federal rights may be a highly predictable consequence of a failure train officials to handle recurrent situations; and (2) the likelihood of recurrence and predictability of the violation of a citizen's rights 'could justify a finding that [the] policymakers' decision not to train an officer reflected deliberate

indifference to the obvious consequence of the policymakers' choice—namely, a violation of a specific constitutional or statutory right.'"[32] Mr. Nash must allege a specific training to mitigate "highly predictable" or "patently obvious" constitutional injuries and it is not enough for him to allege "a single injury 'could have been avoided if an employee had [] better or more training.'"[33]

Mr. Nash does not plead a *Monell* municipal liability claim based upon an alleged policy or custom. He does not allege facts allowing us to plausibly infer the City had an unlawful policy or custom of failing to knock-and-announce and shooting into local businesses causing Mr. Nash's injuries and eventual prosecution. Mr. Nash does not plead an official proclamation, policy, or edict. He does not allege municipal liability based on policy. Nor does Mr. Nash plead customs which caused his alleged constitutional violations. Mr. Nash only pleads facts specific to his injury and arrest, as opposed to widespread or well-known police department practices. Even if Mr. Nash pleaded an unlawful policy or custom, he does not plead facts allowing us to infer an unlawful policy or custom as the affirmative link to the alleged constitutional violations.

Mr. Nash does not plead a municipal liability civil rights claim under either a pattern of violations or single-violation failure to train theory. He pleads facts exclusive to his alleged injuries, and no facts referencing police officers involved in similar incidents. Mr. Nash pleads no facts relating to the City's failure to train its police officers nor how the lack of a specific training caused his injuries.

We dismiss Mr. Nash's claim against the City under section 1983 without prejudice.

### C. We allow Mr. Nash's excessive force claim to proceed against Officer Mitchell subject to defenses.

Mr. Nash alleges Officer Mitchell used excessive force when he discharged his firearm multiple times into the building, without first "knock[ing] and announc[ing]" his presence, striking

him in the buttocks.[34] Mr. Nash held a lowered firearm and began retreating to the back of the building when the police officers discharged their weapons.[35]

The Supreme Court instructs us to analyze excessive use of force claims by state actors against individuals not in police custody under the Fourth Amendment's reasonableness standard.[36] The reasonableness standard requires us to determine "whether the officer's actions were objectively reasonable without considering [the officer's] intent or motivation."[37] Our Court of Appeals directs us to "make our [reasonableness] determination based on the 'totality of the circumstances', including whether the suspect posed an immediate threat to the safety of the officer or others, whether the suspect was actively resisting arrest, and the severity of the crime at issue."[38] Police officers' use of deadly force against an individual "is unreasonable…unless the officer has good reason 'to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'"[39]

We are guided by colleagues allowing excessive force claims to proceed where it is unclear whether the victim posed a threat to the arresting officers.[40] Judge Schwab allowed an incarcerated person to proceed on their excessive force claim where the victim alleged the officers shot him while he lay unarmed and face down.[41] The police confronted the victim while investigating a break-in and receiving reports a shot had been fired.[42] The victim walked away from the officers and pulled out a firearm "attempt[ed] to end his life" but the gun failed to fire.[43] The officers disarmed the victim and shot him several times while he lay unarmed and face-down.[44] Judge Schwab denied the officers' motion to dismiss the excessive force claim holding the officers' allegedly shooting the unarmed victim did not constitute a "reasonable" use of force.[45]

We are also guided by Judge Vazquez's denial of a motion to dismiss an excessive force claim despite the victim's participation in an active robbery at the time of the shooting.[46] The

officers in *Easterling* responded to the victim robbing a convenience store with a firearm.[47] The victim held the firearm to the store owner's head during the robbery.[48] The responding officer saw the victim brandishing a firearm and shot him in the back.[49] Judge Vazquez denied the responding officer's motion to dismiss the excessive force claim holding the officer's use of force "may not have been objectively reasonable" if the officer knew the victim "had been disarmed" at the time of the gunshots.[50]

Mr. Nash's pleaded facts fall somewhere in between those considered by Judges Schwab and Vazquez. Mr. Nash held a "lowered" firearm unlike the unarmed victim in *Cruz*.[51] Mr. Nash held a firearm with his back turned to Officer Mitchell like the victim in *Easterling* but did not threaten others unlike the victim in *Easterling*.[52] But Judges Schwab and Vazquez permitted the pleaded excessive force claim to proceed despite the markedly different behavior of the victims and the markedly different potential threat posed by the victims.

We allow Mr. Nash to proceed on his excessive force claim at this screening stage because Mr. Nash could adduce evidence he posed a minimal threat of harm to the officers which may allow a jury to find Officer Mitchell's use of force unreasonable.[53]

### D. We dismiss Mr. Nash's false arrest and false imprisonment claims against Officer Mitchell without prejudice.

Mr. Nash claims the police officers lacked a warrant and probable cause to enter his business.[54] Mr. Nash alleges Officer Mitchell arrested him without probable cause, a warrant, or knocking-and-announcing violating his Fourth Amendment rights to free from false arrest and false imprisonment.[55]

An arrest and subsequent imprisonment violates the Fourth Amendment if it is made without probable cause.[56] "Thus, the proper inquiry in a [s]ection 1983 claim based on false arrest is 'whether the arresting officers had probable cause to believe the person arrested had committed

the offense."[57] If the police arrest an individual without probable cause, the individual can raise a claim for false imprisonment based on the same arrest under section 1983.[58]

The Supreme Court instructs probable cause is a "fluid concept" "turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."[59] Our Court of Appeals instructs probable cause is an objective test: "[p]robable cause to arrest exists when the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested."[60] "A warrantless arrest is permissible 'if there is probable cause to believe that the suspect has committed or is committing an offense.'[61] Law enforcement officers are permitted to dispense the "knock and announce" requirement if they "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime."[62] Our Court of Appeals instructs a "no-knock" entry is permissible in four situations: "(1) the individual inside was aware of the officers' identity and thus announcement would have been a useless gesture; (2) announcement might lead to the sought individual's escape; (3) announcement might place the officers in physical peril; and (4) announcement might lead to the destruction of evidence."[63]

Mr. Nash alleges Officer Mitchell failed to knock and announce, lacked a search warrant, and lacked probable cause when Officer Mitchell arrested him.[64] He alleges the state violates his liberty holding him in pre-trial detention.[65] Mr. Nash makes conclusory allegations and pleads no facts to support his alleged claims. We do not know the charges against him. We need facts allowing us to plausibly infer improper conduct. We cannot support the inferences drawn by Mr. Nash because they are unsupported by pleaded facts. Mr. Nash fails to plead Fourth Amendment

false arrest and false imprisonment claims against Officer Mitchell in his individual and professional capacity.

But Mr. Nash cannot amend today to bring false arrest or false imprisonment claims. Even if Mr. Nash sufficiently pleaded Fourth Amendment false arrest and false imprisonment claims, we must abstain from interfering with ongoing state criminal proceedings under abstention principles.[66] The Supreme Court in *Younger v. Harris* instructs us to abstain from deciding issues pending in state courts based on the 'notion of comity' between federal and state courts.[67] Federal courts should abstain from exercising jurisdiction under *Younger* when state court litigation falls within one of three "exceptional circumstances": (1) "state criminal prosecutions", (2) "civil enforcement proceedings", and (3) "civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions."[68] If a case falls into one of the three exceptional circumstances in which *Younger* applies, then we consider whether abstention is appropriate under the *Middlesex* factors: "(1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise federal claims."[69] We must abstain under *Younger* if the *Middlesex* factors apply. *Younger* abstention may not apply if a plaintiff shows bad faith or harassment.[70] "A prosecution or proceeding is conducted in 'bad faith' for abstention purposes when it is brought 'without hope' of success" or was initiated with retaliatory, harassing, or other illegitimate motives. [71]

Mr. Nash's claims satisfy the two-step *Younger* analysis. First, Mr. Nash's claim falls squarely within the first *Sprint* Category: there is an ongoing criminal state court proceeding. Second, Mr. Nash's claims satisfy the *Middlesex* factors. Mr. Nash pleads he is a defendant in an ongoing state criminal proceeding. Allowing Mr. Nash to proceed with his false arrest and false

imprisonment claims would interfere with his ongoing judicial proceedings. The Commonwealth's allegedly ongoing prosecution against Mr. Nash implicates the Commonwealth's important interests in enforcing its laws and promoting public safety. Mr. Nash may raise his alleged constitutional violations relating to Officer Mitchell's lack of probable cause, lack of a search warrant, and his failure to knock and announce at the time of his arrest during his pending criminal proceedings. And he may later bring them here as constitutional claims if warranted.

We dismiss Mr. Nash's Fourth Amendment false arrest and false imprisonment claims against Officer Mitchell without prejudice.

### III.    Conclusion

Our Congressionally mandated screening requires we dismiss Mr. Nash's claims against the Philadelphia Police Department with prejudice; his claims against the City without prejudice; and his false arrest and false imprisonment claims against Officer Mitchell without prejudice to renew after his state court proceedings conclude. We allow Mr. Nash to proceed on his excessive force claim against Officer Mitchell subject to defenses.

---

[1] ECF No. 7 ¶ 1.

[2] *Id.*

[3] *Id.* at ¶ 2.

[4] *Id.*

[5] *Id.* at ¶¶ 3.

[6] *Id.* at ¶¶ 5-6.

[7] *Id.* at ¶ 4.

[8] *Id.*

[9] *Id.* at ¶ 10-11.

[10] *Id.* at ¶ 10.

[11] *Id.* at 1.

[12] *Id.* at ¶¶ 4-11.

[13] *Id.* at 3.

[14] *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

[15] *Id.*

[16] *Elansari v. Univ. of Pennsylvania*, 779 Fed. App'x 1006, 1008 (3d Cir. 2019) (*citing Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)).

[17] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[18] *Elansari*, 779 Fed. App'x at 1008.

[19] ECF No. 7 ¶¶ 4, 10.

[20] *Martin v. Red Lion Police Dept.*, 146 Fed. Appx. 558, 562 n.3 (3d Cir. 2005).

[21] *Bishop v. Upper Darby Police Department*, Civ. Action No. 15-6069, 2018 WL 2359241 *3 (E.D. Pa.  2018) (quoting *DeBellis v. Kulp*, 166 F. Supp 2d, 255, 265 (E.D. Pa. 2001) (internal quotations omitted)).

[22] *Id.* (quoting *Draper v. Darby Twp. Police Dep't.*, 777 F. Supp. 2d 850, 856 (E.D. Pa. 2011)).

[23] *Gayle v. Dorward*, 440 F. Supp. 3d 409, 413 (E.D. Pa. 2020).

[24] ECF No. 7 ¶¶ 4-6.

[25] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978) (stating local governments are "persons" under section 1983 and can be sued for monetary damages); *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir 2019).

[26] *Id.*

[27] *Id.*

[28] *Id.*

---

[29] *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020); *Estate of Roman*, 914 F.3d at 798.

[30] *Kane v. Chester Cnty. Dept. of Children, Youth, and Families*, 10 F. Supp. 3d 671, 688 (E.D. Pa. 2014) (quoting *Kline ex rel. Arndt v. Mansfield*, 255 Fed. App'x 624, 629 (3d Cir. 2007)).

[31] *Id.*

[32] *Id.* at 689 (internal quotations omitted).

[33] *Id.*

[34] ECF No. 7 ¶¶ 4-6.

[35] *Id.* at ¶ 4.

[36] *Andresen v. Jackson*, No. 22-2934, WL 2137856 *2 (3d. Cir. Feb. 21, 2023) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

[37] *Id.* (citing *Graham*, 490 U.S. at 397).

[38] *Curley v. Klem*, 298 F.3d 271, 279 (3d Cir. 2002).

[39] *Lamont v. New Jersey*, 637 F.3d 177, 186 (3d Cir. 2011).

[40] *Cruz v. City of Pottsville*, No. 21-00283, 2022 WL 2733207 (M.D. Pa. May 19, 2022), report and recommendation adopted, No. 21-283, 2022 WL 2132844 (M.D. Pa. June 14, 2022); *Easterling v. Perez*, No. 16-4463, 2017 WL 3610484 (D.N.J. Aug. 22, 2017).

[41] *Cruz*, 2022 WL 2733207 at *9.

[42] *Id.* at *1.

[43] *Id.* at *2.

[44] *Id.*

[45] *Id.* at *7-9.

[46] *Easterling v. Perez*, No. 16-4463, 2017 WL 3610484 (D.N.J. Aug. 22, 2017).

[47] *Id.* at *2.

[48] *Id.*

[49] *Id.*

[50] *Id.* at *5.

[51] ECF No. 7 ¶ 4.

[52] *Id.* ("Petitioner immediately lowered his firearm and retreated back into the building[.]").

[53] Abstention principles do not prevent our review of Mr. Nash's excessive use of force claim during the pendency of his criminal prosecution. *Sprint Commc'ns, Inc. v. Jacob*, 571 U.S. 69, 73 (2013) (stating "*Younger* exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution.") Mr. Nash's excessive use of force claim arises out of events which occurred during his arrest, but his claim does not interfere with his ongoing criminal state court proceedings. *See Anderson v. Dauphin Cnty. Adult Probation Office*, No.15-878, 2016 WL 769278, at *9 (M.D. Pa. Jan. 25, 2016), *report and recommendation adopted*, 2016 WL 759162 (M.D. Pa. Feb. 26, 2016) (*Younger* abstention did not apply to plaintiff's excessive force claim against probation officer because the claim had "no bearing on his state criminal proceedings, as he ha[d] not been charged with resisting arrest or any related offense.")

[54] ECF No. 7 ¶ 6.

[55] *Id.*

[56] *Maiale v. Youse*, No. 03-5450, 2004 WL 1925004  *12 (E.D. Pa. 2004) ("[f]alse arrest and false imprisonment are thus nearly identical claims, and are generally analyzed together) (citing *Olender v. Township of Bensalem*, 32 F.Supp.2d 775, 791 (E.D. Pa.1999)); *Groman v. Township of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995) ("A false imprisonment claim under § 1983 which is based on an arrest made without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures…[i]f the jury found in plaintiffs' favor on the false arrest claim, it could also find that [the plaintiff] suffered a violation of his constitutional rights by virtue of his detention pursuant to that arrest").

[57] *Irick v. City of Philadelphia*, No. 07-0013, 2008 WL 2120171, *8 (E.D. Pa. 2008). (internal quotations omitted).

[58] *Glover v. City of Washinton*, 966 F. Supp 417, 427 (D. Del. 2013); *Irick*,2008 WL 2120171 at *8.

[59] *Illinois v. Gates*, 462 U.S. 213, 232 (1983).

[60] *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2000); *Bell v. City of Harrisburg*, 457 Fed. Appx. 164, 166 (3d Cir. 2012) (stating "[t]he test for an arrest without probable cause is an objective one, based on 'the facts available to the officer at the moment of arrest.'") (quoting *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir.1994)).

[61] *Bell*, 457 Fed. Appx. at 166 (quoting *Mich. v. DeFilippo*, 443 U.S. 31 (1979)).

[62] *Kornegay v. Cottingham*, 120 F.3d 392, 397 (3d Cir. 1997) (quoting *Richards v. Wisconsin*, 520 U.S. 385, 394 (U.S. 1997)).

[63] *Id.*

[64] ECF No. 7 ¶¶ 5-6.

[65] *Id.* at ¶ 10.

[66] *Sprint Commc'ns, Inc.* 571 U.S. at 73.

[67] 401 U.S. 37, 43-44 (1971) (stating "the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly should not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable injury if denied equitable relief").

[68] *Smith & Wesson Brands, Inc. v. Attorney Gen. of New Jersey*, 27 F.4th 886, 891 (3d Cir. 2022) (*quoting Sprint*, 571 U.S. at 78, 82).

[69] *Malhan v. Secretary United States Department of State*, 938 F.3d 453, 462 (3d Cir. 2019).

[70] *Abbott v. Mette*, No. 21-1804, 2021 WL 5906146, at *3 (3d Cir. Dec. 14, 2021) (citing *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 435 (1982)).

[71] *Id.* (citing *Perez v. Ledesma*, 401 U.S. 82, 85 (1971) and *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002)).